## MARTIN v. THE BRANCH BANK AT DECATUR.

1. Where a judgment is rendered against two defendants, and one dies, the lands of the survivor may be sold, under an execution, issued on such judgment, without its being revived by *scire facias*.
2. Under the joint resolution of the general assembly of the 31st December, 1842, the Bank of the State of Alabama and its branches have the power to purchase real estate sold under executions in their favor.

Error to the Circuit Court of Madison.   Before the Hon. Sidney C. Posey.

THIS was an action of trespass, to try title to several tracts of land in Jackson county, and to recover damages for the occupancy thereof, instituted by defendant against plaintiff in error, in the circuit court of Jackson, and transferred, by change of venue, to the circuit court of Madison.   At June term, 1839, of the county court of Morgan, the defendant in error obtained a judgment against William G. Martin, Lewis & Davis, and Harris & Snodgrass, for $1756 13, &c., on which execution issued on the 30th July, 1839, and was returned unsatisfied.

In 1840, Lewis, one of the defendants in the judgment, and in 1841, Davis, another of them, died. After the issuance of the first execution, several others, both before and subsequent to the death of Lewis & Davis were issued, and on the 29th July, 1844, a *pluries* was placed in the hands of the sheriff of Jackson county, who levied on the lands in controversy, as the property of William G. Martin, one of the defendants in said judgment, and sold them, and executed a deed therefor, to the defendant in error. William G. Martin was in possession of the lands, at the time the judgment was rendered, under legal title, and the plaintiff in error, who claimed title under him, was in possession of them at the institution of the suit, and up to the date of the trial.

The court charged the jury, in substance,

1. That the fact, that Lewis & Davis, two of the defendants, were dead at the date of the issuance of the execution, under which the sale of the land was had, did not render the execution void, or invalidate the sale.

2. That the defendant in error was capable of buying and holding real estate, sold under execution issued on a judgment in its favor.

To these charges the counsel of the plaintiff in error severally excepted, and now assigns them as error.

S. Parsons and J. Robinson, for plaintiff in error.

It is settled in this State, that if a sole judgment defendant, or one of two judgment defendants die, his land cannot be sold under an execution afterward issued, without reviving. 16 Mass. Rep. 192; 20 Johns. R. 119; 5 Ohio, 221; 2 ib. 414; 10 Wend. 211; 4 Ala. 681, 735, 750; 7 ib. 660; 11 ib. 431; and Burk's adm'r v. Jones & Allen, 13 Ala. 167. And it is elsewhere very fully held, that an execution can not issue, in such case, against the land of the survivor, until the judgment be revived, and that an execution issuing without this is void. 1 Cowen's Rep. 711, 738; 4 Howard's U. S. Rep. 88: and see Stewart v. Nuckles, decided at this term.

By the death of one of several defendants in a judgment, the entire judgment, as to the land of the defendants, becomes inoperative until revived on *sci. fa.* ; or if by suggestion even as to lands, still the action of the plaintiff and of the court

are necessary. Jones, adm'r v. Swift, 12 Ala. 147. It is until revived, but a *chose in action*. A *sci. fa.* is a new suit, and the defendant may plead. 2 Wms. Saunders, 71, note 4. It is a right which the surviving defendant has to remain exempt from the judgment as to his lands, until revived by *sci. fa.* against the heirs and *terre tenants* of the deceased, so that they may contribute. 1 Salk. 319 ; 4 Modern, 316 ; 4 How. 58. And where one of several defendants in a judgment die, if the plaintiff wish to proceed against the land, he may have a *sci. fa.* to subject the land and goods of the survivor, and to subject the land of the deceased in the hands of his heir and *terre tenants*. 2 Tidd's Pr. 1033 ; 1 Salk. 319 ; 1 Cowen's Rep. 739. Thus the heir is to be contributory, and in this way the survivor is not to be injured, and a multiplicity of suits for contribution avoided. The judgment having lost its operation and effect as to the land, the execution, which included the land, varied from it. But an execution must follow the judgment, as it actually is in effect at the time. Underhill v. Devereux, 2 Saunders' Rep. 72, n. 4, top p. 216 and 220 note ; 1 Salk. 319 ; 2 Tidd, 1029 ; 1 Cowen, 738, 741 ; 20 Eng. Com. L. Rep. 475-6-7 ; 2 Tidd, 999, marg. ; Clancy's Hus. and Wife, and cases cited.

C. C. CLAY, Jr., contra.

I. The bank had an unquestionable right to purchase land at her own execution sale. Clay's Dig. 120. But, if there is any doubt of the construction of the foregoing act, on a perusal of the act by itself, that doubt is wholly removed by the joint resolutions, passed at the same session of the legislature, and approved Dec. 31st, 1842. (See acts of Gen. Assem. 1842-3, p. 221-2.) They were passed " in contemplation" of "liquidation," and " with a view to this object," (see preamble,) and, after declaring in' the first resolution, that " the powers of the branches at Mobile and Decatur, &c. **to make settlements** with the debtors of said branch banks, by **receiving** real or personal property, *in payment of debts*, be and the same are hereby suspended," the legislature, by the 2d resolution, empowers said banks " to take liens on real and personal property to secure bad and doubtful debts," and " to purchase any lands, tenements or hereditaments, &c., at

any sale under any mortgage or deed of trust, made to secure the payment of any debt or liability, due or owing to said branch banks, or *at any sale under any execution in favor of the president and directors of the same*, whenever they shall be of opinion that the interest of the said branch banks require any such purchase to be made." Joint resolutions have all the force and effect of statutes; and statutes enacted at the same session of the legislature, are to be taken *in pari materia*, and should be so construed as to give effect to *each if possible·* Smith's Com. on Stat. and Constructions, 755, § 641; Wyman et al. v. Campbell et al. 6 Porter, 219 ; Kinney v. Mallory, 3 Ala. Rep. 626.

The execution is not void as to the surviving defendant, on whose lands it was levied. At most, it was only voidable. The facts are, that judgment was obtained against all the defendants—Lewis and Davis as principals in the note sued on, and William G. Martin, Harris and Snodgrass, as securities ; that a *fi. fa.* issued against all in their life-time, and was levied on this land of William G. Martin, for want of personal property on which to levy, and returned not sold, for want of time ; and a *venditioni exponas* issued, which was never executed or returned. Then Lewis and Davis died ; and after a lapse of two terms, an *alias fi. fa.* issued, and six *pluries* regularly ; the last of which was levied on the same land of William G. Martin, the surviving defendant ; the land was sold, and the bank purchased. No suggestion of Lewis's and Davis's death was entered on record, and no *sci. fa.* issued.

An original *fi. fa.* issued after the death of a sole defendant is void, according to decisions in 11 Ala. Rep. 433 ; 7 ib. 660 ; 6 ib. 55 ; 4 ib. 667; 3 ib. 254.

In the case of joint judgment debtors, this court has held that an execution issued after the death of one, and levied on his property, would be void as to him. But this court does not go to the extent claimed by the counsel of the plaintiff in error, and say, that it is void as to survivors, or that it is indispensable that the death should be suggested, and *sci. fa.* issue to the executors and heirs of the deceased, in order to charge the survivor. The language of the court is, "the fact that there is a plurality of defendants in the judgment, will not render a different rule applicable in respect to one

who is dead. The death might be suggested, and execution issue against the survivors." Jones, adm'r, v. Swift, 12 Ala. 147. So, this court held, that an execution issued after death of a defendant, and levied on his lands, is void. 4 Ala. 681, and 751.

It is well settled by the highest authorities, that an execution may issue after the death of one of several defendants, against all, without suggestion of the death or revival by *sci. fa.*, it must conform to the judgment, and issue against all the defendants. 2 Saund. 72, k. note 4; Bingham on Ex. 137; 1 Archb. Prac. 295; 2 ib. 92; 2 Tidd's Prac. 1009; 9 Mass. R. 19, and note b; 4 Howard's U. S. R. 78; 1 Cow. R. 711; 3 Smedes & Marsh. 17.

The cases of Woodcock v. Bennett, 1 Cowen, and Erwin v. Dundas, 4 How. 78, cited by plaintiff's counsel, admit that, had execution been levied on the goods and chattels of a surviving defendant, it would have been regular, because, at common law, the charge of the judgment, being personal, survived. But, inasmuch as it issued against lands of both deceased and survivor, it is void; because, they say, the charge of the judgment on the realty does not survive.

And this presents the true question, whether the distinction made between subjecting lands and goods of a surviving co-defendant to execution, obtains in Alabama—in other words, whether you may not levy on and sell the land of a surviving co-defendant, as well as his personalty, without suggesting the death of his co-defendant, and running a *sci. fa.* to his heirs and executors? This question has never been decided by this court.

That an execution issued against joint defendants, after the death of one, may be levied on the goods of a survivor, though not on the goods of the deceased, without revival by *sci. fa.*, is abundantly proved by the authorities cited. The direction to sell the goods of the deceased, contained in the writ, does not vitiate it. Then the execution may be good as to the personalty of a survivor, though void as to that of the deceased. Why, then, should the execution be void, because it directs the sale of the land of a dead defendant, as well as of a survivor?

A survivor has not the same reason here, as in England,

for objecting that the judgment was not revived by *sci. fa.* against the heirs of his deceased co-defendant, for there the lands of all the defendants were extended alike, and one might plead in abatement of the writ, if the lands of his co-defendants were not extended equally with his own. 2 Saund. 46, and note 10. But here, as he could not make that plea while all were living, why should the death of a co-defendant entitle him to it? In support of this view, it has been decided, that if one of several parties to a judgment die, after judgment and before execution, a *sci. fa.* is not necessary to authorize execution against the survivors. If it issue against all, without the suggestion of the death of one, survivors cannot take advantage of it. Johnson v. Lynch and Adair, 3 Bibb, 334; 1 Litt. 244; Hamilton v. Lyman, 9 Mass. 14; Davis et al. v. Helm, 1 Smedes & Marsh. 17. So, it has been held, that where judgment was rendered against two, and execution issued against one, though irregular, erroneous and voidable, it was not void, so as to invalidate a levy thereof on land, a sale, and sheriff's deed. 6 Humph. 281.

DARGAN, J.—The material inquiry in this case is this: If a judgment be rendered against two, and one die before execution is issued, can an execution be issued and levied on the lands of the survivor, without a *sci. fa.*, and by a sale thereof, pass the title to the purchaser?

By the common law, if judgment was rendered against two, but one died before the execution issued, nevertheless the plaintiff might sue out execution, and have it levied on the goods of the survivor. Bingham on Ex. 135; 2 Tidd, 1120; 16 Mass. 193; 3 Bibb, 334; 4 Howard, 58. The execution, however, for the sake of conformity with the record, issued as against both; but was in law an execution against the survivor only, and his goods alone could be levied on in satisfaction of the judgment. But if the judgment was against a sole defendant, and he died before execution was issued, no execution could be issued, without a *scire facias* to his representatives.

These are the general rules applicable to executions, so far as they affect the goods and chattels of the defendants. By

Martin v. Branch Bank at Decatur.

the common law, goods could not be sold at all, for the payment of debts, by any judicial process, and the question we are examining, must therefore be solved by a proper construction of our statutes, subjecting lands to the payment of judgments, and prescribing the mode by which they shall be sold.

By the act of 1812, (Clay's Dig. 205) lands are made liable to all judgments and decrees-rendered by any court of record, and the clerks are required to frame their executions accordingly. Under this act, the *fi. fa.* is issued against the goods and chattels, lands and tenements, and the lands are equally liable, under this process, to be sold; and the sale, and execution of the sheriff's deed, will pass to the purchaser a *fee simple* title.

Lands, then, are liable to be sold for the payment of debts under the same writ, by which goods are sold ; and the land of one defendant may be sold, although no levy or sale is made of the land of the other; or the lands of both may be sold, as the goods of one, or both of the defendants might be, at the common law. It may well, then, be asked, if lands, in this state, are liable to be sold under execution, by the same writ, by virtue of which, the goods are sold, and the goods of a surviving defendant may be sold without a *sci. fa.* why deny the right to sell the lands, when both the land and goods are liable, under the same writ, to be sold for the payment of the debt? If the goods of the survivor can be sold without a *sci. fa.*, his lands, which are placed on the same footing, it would seem might be also.

It is true, that there are to be found decisions to the contrary. In the case of Erwin's lessees v. Dundas, 4 Howard, 58, it is said, that if one defendant die, although the execution may go against the goods of the surviving defendant, it cannot be legally issued against his lands, unless it has been revived against the heirs of the deceased defendant. Why is this? Why may not the plaintiff proceed against the land of the survivor, in the same manner that he might against his goods? Both are equally liable to the judgment: both may be sold by the same writ, if the other defendant is in life ; why not, if he is dead? No answer, in my opinion, can be given. It is a little strange, that the court did not notice our statute law, in the opinion delivered in the case referred to.

The land in that case, was sold under our law, and the validity of the sale did not depend, so much on the statute law of Great Britain, as it did on the local law of Alabama; yet the reasoning of the judge is drawn entirely from the statute of Westminster the 2d, Edward the 1st, and the decisions of the English courts upon that statute, without noticing the marked difference between the English statute and our own. Here, we sell, absolutely and by the same process, goods and chattels, lands and tenements; but under the statute of Great Britain, one half the defendant's land was extended in payment of the judgment. If the judgment was against two, being joint, each defendant had the right to insist, that one half of the land of his co-defendant be extended, in order, that the burthen might be lighter on him. He could say, the charge was joint on the lands of both, and both jointly must bear the burthen. But if one defendant died, before execution issued, the lands descended, and the title vested in the heir. He had the right to show cause (as he had never had a day in court) why the judgment was not a charge on his land, and therefore a notice or *scire facias* must issue to him before his lands could be taken in execution. The lands of the surviving defendant being chargeable jointly with the lands of the deceased defendant, and he having the right to insist, that this charge should be equally divided between them, the plaintiff in execution could not extend his land without a *sci. fa.* If, therefore, the goods of the survivor were not sufficient to satisfy the debt, the plaintiff could not proceed by his writ of *elegit*, neither against the heir of the deceased defendant, because he was entitled to have a day in court; or against the surviving defendant, because he had the right to show that the land, descended to the heir of his co-defendant, was jointly liable with his own, to pay and satisfy the charge. Hence arose the necessity of a *sci. fa.* against the surviving defendant, before his lands could be taken in execution. But under our statutes, judgments are joint and several, and executions may be levied on the lands of one of the defendants alone, without levy on the lands of the other, as, at the common law, they could be levied on the goods of one alone, notwithstanding the other had goods liable to the execution. The decisions, therefore, of the English courts,

Martin v. Branch Bank at Decatur.

under their statute, ought not to be adopted here, as ours is entirely different in its legal consequences, and places lands on the same footing with personal property, in reference to the payment of judgments; that is, they may be absolutely sold, under the same process, and a perfect title passed to the purchaser : and the land of one may be sold, though no levy is made on that of the other.   It thus being the right of the plaintiff to sell the land of one, without reference to the other, as, at common law, he could sell the goods of one, without making any levy on the goods of the other.   I cannot, myself, perceive any reason for a *sci. fa.* against a surviving defendant, for it would answer no purpose, and would not benefit him.   The case of Erwin's lessees v. B'k U. S., before referred to, is in accordance with the case of Woodcock v. Bennet, 1 Cowen.   That case, however, if good law at all on this point, must depend on the statute law of New York, or on the statute of Westminster 2d, if it has been adopted in that state.   The whole reasoning of the court is drawn from the English decisions made in reference to this statute, and which, of course, would be inapplicable to ours, differing from it, as it does, so widely in its terms.   It is supposed, however, that we have heretofore adopted the rule of construction that has obtained in England, and seems to be recognized in New York.   It is true, we have held, that the land of a deceased defendant could not be sold, under execution issuing after his death, without *sci. fa.* to his heirs. This is expressly required by the act of 1828.   Clay's Dig. 197.   But the question here raised, has never before been made in this court, and we feel bound to decide it upon our own statutes, and we believe, that a just construction of them warrants us in saying, that the lands of a survivor may be sold under execution issued after the death of a co-defendant, without a *scire facias.*

2.  The other question presented by the record, that the plaintiff was incapable of purchasing real estate, is fully answered by the joint resolution of the general assembly, of the 31st December, 1842, by which the bank was authorized to purchase under executions in its own favor.   We can see no error in the record, and the judgment must be affirmed.